IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:06CV357-W

| | |
|---|---|
| MARY H. MCKEE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>FSC SECURITIES )<br>CORPORATION, PUTNAM )<br>INVESTMENTS, INC., n/k/a )<br>PUTNAM, LLC, PUTNAM )<br>MUTUAL FUNDS CORP., n/k/a )<br>PUTNAM RETAIL )<br>MANAGEMENT LIMITED )<br>PARTNERSHIP, ITT )<br>HARTFORD GROUP, INC., )<br>n/k/a THE HARTFORD )<br>FINANCIAL SERVICES GROUP,)<br>INC., ITT HARTFORD LIFE )<br>AND ANNUITY INSURANCE )<br>COMPANY, n/k/a HARTFORD )<br>LIFE AND ANNUITY )<br>INSURANCE COMPANY, )<br>HARTFORD LIFE INSURANCE )<br>COMPANY, HARTFORD LIFE, )<br>INC., and HARTFORD )<br>SECURITIES DISTRIBUTION )<br>COMPANY, INC., )<br>)<br>Defendants. )<br>)<br>_____ ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on the Defendants' "Motion[s] to Dismiss" (documents ## 42, 46, and 47), all filed January 17, 2007, and the accompanying memoranda filed by the parties in support of and in opposition to those Motions.

This matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

636(b)(1)(B), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the Defendants' Motion to Dismiss be <u>granted in part</u> and <u>denied in part</u>, as discussed below.

## I. <u>PROCEDURAL AND FACTUAL BACKGROUND</u>

This is an action to recover sums that were allegedly embezzled by Scott Hollenbeck, who is not a party to this action, but who, accepting the allegations of the Amended Complaint as true, was, at all times relevant herein, the agent of the Defendants for the purposes of the sale of securities and insurance, including variable annuities that the Plaintiff, Mary H. McKee, purchased or attempted to purchase through Mr. Hollenbeck.

The Plaintiff has only a high school education and was widowed in 1992 after 38 years of marriage. During her marriage, the Plaintiff was a homemaker, and she has never worked outside her home.

The Plaintiff contends that prior to becoming the Defendants' agent and carrying out the embezzlement scheme described below, Mr. Hollenbeck had engaged in similar behavior that was either known or should have been known by the Defendants prior to their making him their agent. Specifically, the Plaintiff alleges that "[Mr.] Hollenbeck stole thousands of dollars from Fairhaven Baptist Church in Chesterton, Indiana. He stole from the church's Sunday night offerings, took gifts designated to the church by others, and stole food and other items from the church bookstore and snack shop." "Amended Complaint" at 4-5 (document #36).

Further, Mr. Hollenbeck's prior employer, The Prudential Insurance Company of America

2

Case 3:06-cv-00357-MR -CH   Document 55   Filed 03/05/07   Page 2 of 11

("Prudential"), allegedly reported to the National Association of Securities Dealers, Inc. ("NASD") on a Form U-5 that in his capacity as Prudential's agent, Mr. Hollenbeck "had submitted bogus business and committed alleged forgeries ... and had used his home address for insureds' applications."

Taking the Amended Complaint as true, this filing would have been discovered by the Defendants had they conducted a reasonable investigation prior to retaining Mr. Hollenbeck.

The Plaintiff alleges that sometime in or before 1997, the Hartford Defendants and the Putnam Defendants[1] began a joint venture to sell "Putnam Hartford Capital Manager" variable annuities, including through their agent FSC, a North Carolina stock brokerage firm registered with the NASD.

Sometime in June 1997, the Plaintiff's son died and the Plaintiff received a substantial sum from the proceeds of her son's life insurance policy.[2] The Plaintiff alleges that on September 23, 1997, at a time when she was "elderly"[3] and was "beginning to suffer from mild dementia and short term memory loss," Mr. Hollenbeck "induced her" to purchase a $120,000 Putnam Hartford Capital Manager variable annuity. Unlike payments the Plaintiff later entrusted to Mr. Hollenbeck, she alleges that this initial payment resulted in an annuity being issued to her that identified Hartford and Putnam as the issuers of the annuity and FSC as the "broker-dealer" of the transaction.

---

[1] The "Hartford Defendants" consist of ITT Hartford Group, Inc., n/k/a the Hartford Financial Services Group, Inc., ITT Hartford Life and Annuity Insurance Company, n/k/a Hartford Life and Annuity Insurance Company, Hartford Life Insurance Company, Hartford Life, Inc., and Hartford Securities Distribution Company, Inc., while the "Putnam Defendants" are Putnam Investments, Inc., n/k/a Putnam, LLC, Putnam Mutual Funds Corp., n/k/a Putnam Retail Management Limited Partnership. The remaining Defendant is FSC Securities Corporation ("FSC").

[2] The record does not reflect if any of the Defendants was the issuer of that policy.

[3] On December 1, 2006, the date the Amended Complaint was filed, the Plaintiff was 79 years old.

3

On October 22, 1997, Mr. Hollenbeck prepared, and the Plaintiff signed, an application for an additional annuity in the amount of $70,000. However, the Plaintiff alleges that Mr. Hollenbeck "did not invest the funds in the annuity, and he instead converted the $70,000 to his own use." Id. at 6. The Plaintiff further alleges that utilizing the same scheme on at least four subsequent occasions, Mr. Hollenbeck embezzled funds that the Plaintiff believed were being used to purchase additional annuities, that is, to purchase annuities for $30,000 on December 4, 1997, $59,637.83 on January 21, 1998, $19,473.05 on May 19, 1998, and $31,625.11 on August 26, 1998.

At this point in the proceedings, the Defendants concede that in order to prevent the Plaintiff from discovering his scheme, Mr. Hollenbeck paid the Plaintiff the monthly income she otherwise would have received if all of the annuities, in fact, had been issued.

For reasons unknown to the Court, sometime in 2005, Mr. Hollenbeck ceased making the monthly income payments to the Plaintiff, causing her to inquire with the Defendants, that is, to ask for verification of the existence and amount of the annuities.

Significantly, the Plaintiff then alleges that sometime in 2006, the Defendants informed her that other than the initial $120,000, none of her money had been invested (as promised) by Mr. Hollenbeck.

On August 8, 2006, the Plaintiff filed her Complaint, which states (as amended) claims for fraud, unfair and deceptive trade practices, conversion, breach of fiduciary duty, negligence, breach of contract, and "money had and received."

On November 3, 2006, the Defendants filed their first Motions to Dismiss. See documents ## 23, 26, and 28.

On December 1, 2006, and with the Defendants' consent, the Plaintiff filed her Amended

Complaint, which as the Defendants now expressly concede, rendered moot their initial dispositive Motions. Accordingly, the undersigned will respectfully recommend that the Defendants' initial Motions to Dismiss be denied as moot.

On January 17, 2007, the Defendants filed their second Motions to Dismiss, which are premised primarily on factual disputes, that is, the Defendants deny that Mr. Hollenbeck was ever their agent or that they were ever aware of his alleged fraudulent and criminal behavior. Rather, the Defendants state that they were as "duped" by Mr. Hollenbeck as was the Plaintiff. Additionally, the Defendants contend that sales of securities are exempted from North Carolina's unfair and deceptive trade practice statute, and that the Plaintiff's conversion, negligence, breach of contract, breach of fiduciary duty, and monetary claims are barred by the applicable statutes of limitation.

The Defendants' Motions to Dismiss have been fully briefed and are, therefore, ripe for disposition.

## II. DISCUSSION OF CLAIMS

### A. Standard of Review

"A motion to dismiss under [Fed. R. Civ. P. 12(b)(6)] tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 828 (1993), citing 5A C. Wright & A. Miller, Fed. Practice and Procedure §1356 (1990).

"A motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be

proved in support of [the subject] claim." McNair v. Lend Lease Trucks, Inc., 95 F.3d 325, 328 (4th Cir. 1996)(en banc), citing Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989); and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969). Accord Republican Party of NC, 980 F.2d at 952 ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief")(internal citation omitted).

In considering a Rule 12(b)(6) motion, the complaint must be construed in the light most favorable to the nonmoving party, assuming factual allegations to be true. See, e.g., Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); Martin Marietta v. Int'l Tel. Satellite, 991 F.2d 94, 97 (4th Cir. 1992); and Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989).

Applying these principles, at the outset, the undersigned concludes that consideration of the Defendants' factual contentions would be premature at this stage of the proceeding. Discovery may reveal that Mr. Hollenbeck, in fact, was not the agent of any of the Defendants and that they were unaware of and could not have discovered Mr. Hollenbeck's malfeasance. For purposes of resolving these initial dispositve motions, however, the Plaintiff's detailed allegations that Mr. Hollenbeck was the Defendants' agent or, at least, clothed with the apparent authority of an agent, must be taken as true. Accordingly, to the extent that the Defendants' Motions to Dismiss are premised on these factual arguments, the undersigned will respectfully recommend that those Motions be denied without prejudice to the Defendants' right to renew those arguments at the close of discovery.

## B. Unfair and Deceptive Trade Practices Claim

To establish a claim for unfair and deceptive trade practices under North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, ("UDTPA"),[4] a plaintiff generally must prove that "(1) defendants committed an unfair or deceptive act or practice; (2) in or affecting commerce; and (3) that plaintiff was injured thereby." First Atlantic Management Corporation v. Dunlea Realty Co., 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998), citing Canady v. Mann, 107 N.C.App. 252, 260, 419 S.E.2d 597, 602 (1992).

The Fourth Circuit Court of Appeals has recently stated that the UDTPA is intended to prohibit "conduct [that is] inherently unfair, unscrupulous, and injurious to consumers." ABT Building Products v. National Union Fire Ins. Co. Of Pittsburgh, 472 F. 3d 99, 125 (2006) (where plaintiff business was "consumer" of insurance policy issued by defendant, whose conduct otherwise amounted to violation of North Carolina's Insurance Unfair Trade Practices Act, N.C. Gen. Stat. § 58-63-1, said conduct also amounted to violation of UDTPA) (emphasis added).

For the purposes of their Motions, the Defendants do not dispute that if proven, embezzlement of the type and in the context allegedly committed by Mr. Hollenbeck would amount to unfair and deceptive trade practices. Rather, as noted above, they contend only that the sale of variable annuities are excluded from the UDTPA.

In North Carolina, "securities transactions are beyond the scope of [the UDTPA]." Skinner v. E.F. Hutton & Co., 314 N.C. 267, 275, 333 S.E. 2d 236, 241 (1985). Accord White v. Consolidated Planning, Inc., 166 N.C. App. 283, 304, 603 S. E. 2d 147, 161-62 (2004). However,

---

[4] N. C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful."

7

the North Carolina Court of Appeals has recognized the hybrid nature of annuities – that is, that consumers may view an annuity as either a life insurance product or an investment – and for purposes of the UDTPA, has held that absent evidence that annuities are "capital-rasing instruments," they are to be treated as "life insurance products" subject to the UDTPA. White, 166 N.C. App. at 304, 603 S. E. 2d at 161-62.

In other words, the classification of annuities as securities or life insurance products depends on the circumstances in each particular case and is a question properly reserved for the jury. Id. (reversing summary judgment on plaintiff's UDTPA claim). Accordingly, the undersigned will respectfully recommend that the Defendants' Motions to Dismiss be denied as to the Plaintiff's unfair and deceptive trade practices claim.

### C. Statute of Limitations

The Plaintiff's claims for breach of fiduciary duty, conversion, negligence, breach of contract, and for money had and received are governed by three-year statutes of limitation. See N.C. Gen. Stat. § 1-52 (1) (breach of fiduciary duty, contract, and money had and received), (4) (conversion), and (5) (negligence).

The Defendants' contentions to the contrary notwithstanding, in North Carolina the discovery rule applies to the statute of limitations on breach of fiduciary duty claims, which "begins to run when the claimant knew or by due diligence should have known of the facts constituting the basis for the claim." Dawn v. Dawn, 122 N.C. App. 493, 495, 470 S.E.2d 341, 343 (1996). Moreover, "the question of when [a] plaintiff ... knew or should have known of the trustee's alleged breach of fiduciary duty is for the trier of fact to resolve." Id. at 496, 470 S.E.2d at 343. Accord Pittman v.

8

Pittman, 117 N.C. App. 580, 591-92, 452 S.E.2d 326, 333 (1995) ("to resolve the issues raised by the ... [statute of limitations] defense, the trial court was required to resolve the conflict in the evidence as to when [the plaintiff] first knew or should have known of the facts giving rise to his claim for alleged breach of fiduciary duty").

Although the Defendants may be able to develop evidence establishing otherwise, at this early point in this litigation, accepting as true the Plaintiff's allegation that she was prevented from discovering Mr. Hollenbeck's embezzlement by his ongoing scheme to conceal his activities until sometime in 2005, her breach of fiduciary duty claim, filed on August 8, 2006, was timely. Accord Dawn, 122 N.C. App. at 495-96, 470 S.E.2d at 343; and Pittman, 117 N.C. App. at 591-92, 452 S.E.2d at 333.[5]

The same discovery rule does not apply, however, to the Plaintiff's other disputed claims. See, e.g., W.D. Peal v. Martin, 207 N.C. 106, 107, 176 S.E. 282, 283 (1934) (claim for "money had and received"); White, 166 N.C. App. at 304, 603 S. E. 2d at 161-62 (discovery rule applies to claims sounding in fraud, not negligence or conversion); and Harrold v. Dowd, 149 N.C. 777, 781, 561 S.E. 2d 914, 917-18 (2002) (same for contract claims). Accordingly, where accepting the Amended Complaint as entirely true, and the last act that the Plaintiff complains of occurred sometime in 1998, her claims for breach of contract, negligence, conversion, and for money had and received were untimely filed, and the undersigned will respectfully recommend that the Defendants' Motions to Dismiss be granted as to those claims.

---

[5] The Defendants concede that the statutes of limitations on the Plaintiff's fraud and unfair and deceptive trade practices claims were tolled by the disocvery rule.

9

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends:

1. The Defendants first Motions to Dismiss (documents ## 23, 26, and 28) be **DENIED AS MOOT**.

2. The Defendants' second Motions to Dismiss (documents ## 42, 46, and 47) be **GRANTED IN PART** and **DENIED IN PART**, that is, the Plaintiff's claims for breach of contract, negligence, conversion, and for money had and received be **DISMISSED WITH PREJUDICE**, and that the Defendants' Motions be **DENIED** in all other respects. Provided, however, that at the conclusion of discovery, the Defendants be permitted to re-assert the factual arguments concerning agency which are premature at this point in the proceeding.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins,

766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Frank D. Whitney.

**SO RECOMMENDED AND ORDERED.**

Signed: March 5, 2007

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge